**UNITED STATES of America,**
**Plaintiff,**

v.

**Paul MEYER, Harry T. Hartman, and**
**Anna L. Hartman, Defendants.**

**Civ. No. 2904.**

United States District Court
S. D. Illinois, S. D.

Nov. 1, 1961.

Edward R. Phelps, U. S. Atty., Springfield, Illinois, Lorence L. Bravenec, Atty. for Justice Dept., Washington, D. C., for plaintiff.

Mudge & Mudge, Edwardsville, Ill., for Paul Meyer.

Harry T. Hartman and Anna L. Hartman not represented.

POOS, District Judge.

This suit is brought by the United States to foreclose an income tax lien. The Complaint alleges that plaintiff seeks to foreclose federal tax liens on five tracts of real estate, and is brought pursuant to Sections 7401 and 7403 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 7401, 7403. Jurisdiction is based under Title 28 U.S.C. §§ 1340 and 1345, and under Section 7402(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 7402(a).

The further allegations of the Complaint are that the District Director of Internal Revenue on April 8, 1955, made an assessment of income tax deficiencies with penalties and interest for the year

1946 in the amount of $3,789.20 against Harry T. Hartman who was given notice of the assessment on April 19, 1955, at which time demand for payment was made, and on June 28, 1955, filed notice of lien with the Recorder of Deeds of Madison County, Illinois. Part of the demand for this income tax year was paid, leaving a lien balance of $2,099.54. Similar assessments were made and notice of lien filed on the same dates for the year, income tax year of 1947, in the amount of $16,101.38 against Harry T. Hartman; for the year 1948, in the amount of $6,329.46 against Harry T. Hartman; and for the year 1950, in the amount of $11,331.47 against Harry T. Hartman and Anna L. Hartman.

The further allegation is that the federal tax assessments are prior liens on five tracts of real estate which were owned by Harry T. Hartman and Anna L. Hartman until October 24, 1957, as against the rights of defendant, Paul Meyer. The veracity of this allegation depends on the construction of real estate tax laws of Illinois, because the further allegation is that the real estate involved was sold on January 18, 1955 for delinquency in general property taxes of Illinois, and its various political subdivisions of government such as the City of Venice, Illinois, school districts, commissioner of highways, and Madison County, Illinois, to defendant Paul Meyer, who, at the time of purchase at the sale, received certificates of purchase; that after the two-year redemption period granted by the Constitution and Statutes of Illinois, to Harry T. Hartman and Anna L. Hartman, had expired, tax deeds were issued to the defendant Paul Meyer. The prayer is for an adjudication, (1) that the defendant Harry T. Hartman is liable to the United States for unpaid taxes with interest and penalties assessed against him in the amount of $35,861.85 plus interest, as provided by law, and that the defendant Anna L. Hartman is jointly and severally liable to the United States for unpaid taxes with interest and penalties assessed against her in the amount of $11,331.47, plus interest as provided by law;

(2) that the Court adjudicate all matters involved herein and finally determine the merits and priority of all claims to and liens upon the real estate involved, including the liens of the United States, for unpaid taxes, (3) that the Court find, determine and adjudge that the United States has valid and first liens in the total amount of $35,861.85 plus interest, (4) that the Court order the foreclosure of the tax liens on the real estate and order the distribution of the proceeds of sale first to the United States in satisfaction of its liens, and (5) that plaintiff be granted its costs and such other and further relief as to the Court seems proper.

The defendants, Harry T. Hartman and Anna L. Hartman, have been defaulted. The defendant Paul Meyer filed a sworn motion to dismiss the Complaint in which he asserts that his rights are superior to the United States in, (1) that he became a purchaser for value of the real estate in question on January 18, 1955, at which time he purchased the property at the tax sale prior to the time the assessment for income tax deficiency against the Hartman's by the District Director of Internal Revenue, (2) that the Complaint fails to allege a cause of action against defendant Paul Meyer in that it fails to assert a superior interest to that of Paul Meyer, for the reason that Paul Meyer purchased the property for delinquency in general property taxes on January 18, 1955, and three months before the District Director of Internal Revenue made any assessment for income tax deficiency against the then owner of the property, the Hartman's, by reason of which the interest of the United States in and to the described property by reason of the assessed income tax deficiency, became no greater than the interest of the Hartman's, which, under the law of the State of Illinois, was a right to redeem from the State tax sale held on January 18, 1955, and the Complaint showing on its face that the Hartman's and the United States, having failed to redeem within the two-year statutory and Illinois constitutional period, defend-

ant Paul Meyer became the owner of the real estate described in the Complaint, and (3), that the Complaint, in so far as defendant Paul Meyer and his interest in the real estate is concerned, fails to allege facts which, if true, would establish a lien in favor of the United States under the provisions of Section 6321 and 6323 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 6321, 6323, and (4), that by reason thereof the Complaint should be dismissed as to defendant Paul Meyer.

This defendant attaches to his sworn motion a judgment of the County Court of Madison County, Illinois, in which the County Treasurer of Madison County, Illinois, certifies that various pieces of the real estate described in the Complaint are included in the judgment. The judgment is as follows:

"In the County Court of Madison County, Illinois, Monday, January 10, 1955.

"In the matter of the application of James T. Callahan, County Collector of Madison County, Illinois, in judgment and order of sale of delinquent lands, lots, tracts and part of lots and tracts upon which the taxes, special taxes or special assessments, delinquent installment or installments, special assessment or special assessments remain due and unpaid.

"And now, on the 10th day of January, A. D. 1955, comes James T. Callahan, County Collector of Madison County, Illinois, and presents proof of publication lists of delinquent land, lots and tracts upon which the general taxes, interest, penalties and costs remain due and unpaid for the year A. D. 1953, and less than eight (8) prior years as herein set forth, and he also presents the delinquent lists as required by law and prays the Court for judgment against said delinquent lands, lots, parts of lots, and tracts of land named and set forth in the Tax Judgment, Sale, Redemption and Forfeiture Record heretofore filed herein

for the general taxes, interest, penalties, costs due and unpaid thereon for the year or years therein set forth, and for an order to sell said lands, lots, parts of lots and tracts of land for the satisfaction thereof.

"Whereas, due notice has been given of the intended application for judgment against said lands and lots, and no sufficient defense having been made or cause shown why judgment should not be entered against said delinquent lands, lots, parts of lots, and tracts of land for the general taxes, interest, penalties and costs due and unpaid thereon for the year or years therein set forth, therefore it is considered by the Court that judgment be and is hereby entered against the aforesaid lands, lots, parts of lots, or tracts, (as the case may be), in favor of the People of the State of Illinois for the sum annexed to each, and it is ordered by the Court that the said delinquent land, lots, parts of lots and tracts of land for the general taxes, interest, penalties, and costs annexed thereto, severally be sold as the law directs.

"Judge Michael Kinney,
County Judge of County
Court of Madison County, Illinois

"Whereupon it is ordered by the Court that any and all objections that may be filed therein shall be filed on or before the hour of 11:59 o'clock A. M. on Saturday, January 15, A. D. 1955."

This is the judgment under which the lands, lots or parts of lots described in the Complaint were sold to defendant Paul Meyer on January 18, 1955, and under which certificate or certificates of purchase were issued on said date, and which certificates ripened into tax deeds on October 24, 1957, in accordance with the procedures provided for by Illinois Revised Statutes, 1953, Chapt. 120, § 747.

The plaintiff made the assessments to the taxpayers, the Hartmans, on April 19,

1955, and on June 28, 1955 filed notices of liens for the assessed federal tax liabilities with the Recorder of Deeds of Madison County, Illinois, at his office in Edwardsville, Illinois, in accordance with Illinois Revised Statutes, 1953, Chapt. 82, §§ 66 through 70, entitled "An Act in relation to liens for internal revenue taxes payable to the United States of America."

Section 66 provides:

"Notices of liens for internal revenue taxes payable to the United States of America and certificates discharging such liens may be filed in the office of the recorder of deeds of the county within which the property subject to the lien is situated * * *. Until such notice of lien is registered it shall not be valid as against any mortgagee, purchaser or judgment creditor having or claiming any right, title or interest in or to, or lien against such registered property."

Section 67 provides:

"The recorder of deeds of each county shall procure at the expense of the county a file labeled 'Federal Tax Lien Notices' and an index book labeled 'Federal Lien Tax Index.' When a notice of any such tax lien is presented to him for filing, he shall file it in numerical order in the file and shall enter it alphabetically in the Federal lien tax index. The entry shall show the name and residence of the taxpayer named in the notice, the collector's serial number of the notice, the date and hour of filing and the amount of tax and penalty imposed."

Section 70 provides:

"This Act is passed for the purpose of authorizing the filing of notices of liens in accordance with the provisions of section 3186 of the Revised Statutes of the United States, as amended by the Act of March 4, 1913,—37 Statutes at Large, page 1016,"

which is now Sec. 6323(a) of the Internal Revenue Code of 1954.

These sections of the Illinois Statute give the District Director of Internal Revenue authority to file Internal Revenue tax liens with the Recorder of the respective counties in Illinois, and was the authority for filing the Internal Revenue tax lien herein complained on, in Madison County, Illinois.

Thereafter on August 21, 1956, defendant Paul Meyer filed with the County Clerk of Madison County, Illinois, in Causes Numbers 740, 813 and 814, entitled, "In the Matter of Application of the County Collector for Judgment of Sale Against Said Lands and Lots Returned and Delinquent for non-payment of general taxes for the year 1953 and prior years," petitions for the issuance of tax deeds. Three petitions as above entitled were filed in Cause No. 740, two in Cause No. 813, and two in Cause No. 814. These petitions made application to the County Court in the above entitled judgment for sale proceedings for the issuance of tax deeds on all the parcels of real estate involved in this foreclosure proceedings. Notice of the application for Tax Deeds in each of the proceedings was served on the United States Attorney at Springfield, and on the District Director of Internal Revenue on the 14th day of August, 1957. This notice was addressed to "Harry T. Hartman, Cora Hartman, Anna L. Hartman, to occupants or persons in actual possession of the hereinafter described real estate, to the assessee, owner of, or parties interested in said property, including trustees and mortgagees of record, and to the unknown owners thereof", and stated:

"Take notice: That at a sale of real estate made by the Collector of Madison County, State of Illinois, at the Court House of said County, on the 18th day of January, 1955,

"Except NE 5 ft. of Lot 30, and all Lot 31, Block 21, Knox and Smith's Second Addition, Venice Township, Madison County, Illinois, situated in said County and State,

was sold for the general taxes levied, and assessed thereon, for the year 1953, and a Tax Sale Certificate of Purchase was duly issued.

"The time of redemption from said sale will expire June 21, 1957.

"Further take notice that the holder of this Certificate, on the 21st day of August, 1956, filed a petition in the County Court of said County in a proceedings entitled 'In the Matter of the Application of the County Collector for judgment and sale against said lands and lots returned delinquent for non-payment of taxes for the year 1953, and prior years', being the same proceedings wherein the judgment of sale was entered upon which the above tax sale was had, praying that the Court direct the County Clerk to issue a tax deed conveying the above described real estate to him if said real estate shall not be redeemed from the said tax sale. Said petition is No. 740, and the holder of this Certificate, the petitioner, intends to apply to said County Court for an order for said tax deed on the 24th day of June A.D. 1957, if the above described real estate shall not be redeemed from said tax sale.

"Paul Meyer,
"Holder of Certificate
of Purchase."

This notice was served on the United States Attorney and H. J. White, Director of Internal Revenue, as the mortgagee or trustee or party interested, on March 14, 1957.

Similar proceedings were had, and notices served on the United States Attorney and H. J. White, District Director of Internal Revenue as to Lot 10, Block 5, Harrington Place, Venice Township, Madison County, Illinois, Lots 14 and 15, Block 2, Harrington Place, N ½ of Lot 8 and all of Lot 7, Block 5, Harrington Place, both in Venice Township, Madison County, Illinois, and 40 ft. SW side Lot 19, Block 45, Original Plat, Granite City Township, Madison County, Illinois.

Thereafter, on September 24, 1957, the County Judge ordered the County Clerk to issue to Paul Meyer tax deeds in the form provided by Statute.

These various steps, as held in the County Court of Madison County, Illinois, and as provided by the Illinois Statutes hereinafter mentioned, resulted in the County Clerk's issuing deeds to the defendant Paul Meyer for all the property herein involved in this foreclosure proceedings.

These proceedings in the County Court of Madison County, Illinois, were held as provided for under the provisions of Illinois Statutory Law passed for the purpose of enforcing payment of delinquent. Illinois real estate taxes. The sections of the Illinois Statute providing for the payment, collection and enforcement of tax delinquencies are I.R.S.1959, Chapter 120, Section 705, defining delinquency dates; Section 706, providing for advertisement and application for judgment; Section 710, providing the time of applying for judgment; Section 711, providing for notice to owner before tax sale; Section 713, providing for Tax Judgment Sale, Redemption and Forfeiture record; Section 716, providing for Judgment, court proceedings and order of sale; Section 719, providing for notice of sale; Section 720, providing for the process for sale; Section 721, providing for County Clerk's assistance at sale; Section 722, providing for the record entry of sale; Section 724, providing the manner of conducting the sale; Section 726, providing for acceptance of bids; Section 728, providing for the payment of bid price by purchaser; Section 729, providing for the issuance of certificates of purchase; Section 734, providing the time in which redemption can be made; Section 739 providing for the tax deed requisites and filing of deed for record; Section 744, providing for the giving of notice as condition precedent to issuance of tax deed; Sections 747 and 747a providing for the petitions to County Court for order for deed; Section 748, providing for the issuance of a single deed for more than one purchase at same sale; Section 749,

providing the form and effect of the deed; and Section 751, providing for the admissibility of the deed in evidence, and that it is prima facie evidence of the following facts:

"First, That the real estate conveyed was subject to taxation at the time the same was assessed, and had been listed and assessed, in the time and manner required by law.

Second, That the taxes or special assessments were not paid at any time before sale.

Third, That the real estate conveyed had not been redeemed from the sale at the date of the deed.

Fourth, That the real estate was advertised for sale in the manner and for the length of time required by law.

Fifth, That the real estate was sold for taxes or special assessments as stated in the deed.

Sixth, That the grantee in the deed was the purchaser or assignee of the purchaser.

Seventh, That the sale was conducted in the manner required by law.

And any judgment for the sale of real estate for delinquent taxes, except as otherwise provided in this Section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment or decree, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions, the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the *tax* or special assessments have been *paid* or the real estate was *exempt* from general taxes under this Act, or was not subject to special assessment * * * *"

These statutes have all been complied with, and under these statutes and the Constitution of Illinois, the only remedy available to plaintiff was to redeem from the tax sale within two years. Such redemption, if made, would cut off the rights of any tax sale purchaser and holder of a tax sale certificate as provided by Section 743, Chapt. 120, The Revenue Act, and any redemption made would inure to the benefit of the person having the legal or equitable title as provided for in Section 734 of the Illinois Revenue Act.

The plaintiff concedes that the tax proceedings and sale were good and valid, and that all steps to insure the validity of the proceedings through the issuance and recording of the tax deed have been complied with, but says that the interest of plaintiff, the United States, under its tax liens on the involved realty is superior to that of defendant Paul Meyer for the assigned reason, viz., the interest of Meyer was inchoate at the time the plaintiff's tax lien attached.

The plaintiff lays its case on the conceded facts of compliance by defendant, Paul Meyer, with Sections 697, 729, 734 and 747 of Chapt. 120, I.R.S.1953. It says that the real estate in question was owned by the taxpayers, Harry T. and Anna L. Hartman, until October 24, 1957; that it was sold pursuant to I.R.S., Chapt. 120, Section 697, on January 18, 1955, for delinquency in general property taxes to defendant Paul Meyer, who, at the time of sale, received certificates of purchase under Chapt. 120, Sec. 729, I.R.S.; that after the two-year redemptive period granted to Harry T. and Anna L. Hartman under the Constitution and Statutes of Illinois, Constitution of Illinois, 1870, Article IX, Section 5, S.H.A.; and Illinois Revised Statutes, tax deeds were issued to defendant Paul Meyer on October 24, 1957, under I.R.S., Chapt. 120, Sec. 747, and asserts that two dates, viz., January 18, 1955, and June 28, 1955, are the pivotal dates in determining the priority of the Government lien. The January 18th date was the date of the tax

sale of the property, and the date on which certificates of purchase at tax sale were issued to defendant Meyer, and the date of June 28, 1955, is the date on which plaintiff filed its perfected internal revenue tax lien with the Recorder of Madison County, Illinois.

Plaintiff further asserts that because the tax deeds were not issued until October 24, 1957, the government plaintiff, by reason of the filing of its tax lien, prior to the issuance of deed, but not prior to tax sale judgment sale date, has a priority over the deeds by reason of priority in time of the filing of the government tax lien to the date of the issuance of the tax deed.

The government plaintiff bases its contention on the fact, as it says, viz., the government lien was filed after the certificate of purchase at the tax sale, but because, as it says, the certificate was evidence only of an inchoate right to a deed at the time of issuance and for two years thereafter, reasoning that because the lien was filed while the certificate was inchoate, the right could never become consummate or superior as against the filed revenue income tax lien. This contention is based on what they say the law is, as announced in United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. This case announces the rule, page 84, 74 S.Ct. page 369, that a lien is choate when the following elements are met, (1) identity of the lienor, (2) the amount of the lien, and (3) the identity of the property subject to the lien. The same rule is announced in People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 372, 375, 67 S.Ct. 340, 346, 91 L.Ed. 348 where the Court said:

"It is true that the filing of notice of lien determined the amount of the lien, though the state may have computed wrongly the amount of taxes owed it. * * * But it is not enough that the amount of the lien be known. The lien must attach to specific property of the debtor. This the Illinois lien had not done at the time the receiver was appointed.

Indeed, as was stated at the argument not only was the property not in the hands of the bailiff, but so far as appears, the amount or type of property belonging to the debtor was not known to the state. * * *

"The long-established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time. These are: (1) the identity of the lienor, United States v. Knott, 298 U.S. 544, 549–551 [56 S.Ct. 902, 80 L.Ed. 1321 (2) the amount of the lien, United States v. Waddill [Holland & Flinn] Co., 323 U.S. [353] at [pages] 357–358 [65 S.Ct. 304, at page 307, 89 L.Ed. 294]; and (3) the property to which it attaches, United States v. Waddill [Holland & Flinn] Co., supra; United States v. [State of] Texas, supra [314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356]; [People of State of] New York v. Maclay, supra [288 U.S. 290, 53 S.Ct. 323, 77 S.Ct. 754]. It is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity. * * * *"

That these three requirements have been met in the instant case can be observed from an inspection of the record herein and the Revenue Laws of Illinois.

The Illinois Statute, Chapt. 120, Sec. 697, I.R.S., provides for the lien of taxes and the time when it attaches, in the following language:

"The taxes upon real property, together with all penalties, interest and costs, that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and encumbrances, from and including the first day of January, in the year in which the taxes are levied until the same are paid or until the real property is sold pursuant to any of the provisions of this Act * *."

Under this Section of the Illinois Statute, the taxes for the respective subdivi-

sions of government of Illinois, such as county, school district, highway commissioner and municipality, became liens as against the real estate in question on January 1, 1954, the year previous to the year in which the taxes were payable.

Under Sections 637 and 638, Chapt. 120, I.R.S.1953, the Illinois Revenue Act, the various municipal taxing bodies, including counties, must appropriate and levy the tax for the year in case of counties the size of Madison at the annual meeting in September of each year, and in the case of incorporated towns, districts, cities and villages, said bodies shall annually on or before the second Tuesday in September of each year, certify their respective tax levies to the County Clerk. These levies become liens as of January 1st of the year in which they are made, and in this case as of January 1, 1954.

Sec. 644 provides for the extension of the taxes to be raised under the respective levies by the County Clerk of each respective county; Section 651 requires the County Clerk to annex to each Collector's book a warrant under his hand and seal, commanding the Collector to collect from the several persons named in said book the several sums entered in the column of totals opposite their respective names. Section 653 requires the respective County Clerks to deliver the books to the County Collector * * * on or before the 31st day of December annually. Section 657 provides that the County Treasurer shall be the Collector in counties under township organizations * * * shall be ex-officio county collector; Sec. 671 provides that the Collector, on receiving the books, shall proceed to collect the taxes; Sec. 675 provides that current taxes shall be payable in two installments, and Sec. 677 provides:

"Whenever any person shall pay the taxes charged on any property, the collector shall enter such payment in his book, and give a receipt therefor, specifying by whom paid, the amount paid, what year paid for, and the property and value thereof on which the same was paid, according to its description in the collector's books, in whole or in part of such description, as the case may be * * *."

It has previously been pointed out that the lien for real estate taxes attaches as of January 1st of each year in which levied. Thus, from these various Sections can be seen the plan of the General Assembly of Illinois for the levy, assessment, extention, collection and lien of real estate taxes.

The record shows that the owners of the property, the Hartmans, were delinquent in the payment of the taxes as provided for under the above referred to Sections of the Illinois Revenue Act. On delinquency, by reason of default in payment, application for judgment and sale order was made to the County Court of Madison County, Illinois. This application for judgment and sale order is presented under the direction of Section 706, Chapt. 120, The Revenue Act, I.R.S., 1953, which, among other things, provides:

"At any time after the first day of September next after all of such delinquent taxes on lands and lots shall become due in any year, (Section 705 provides that half of the real estate taxes are due on July 1, and as to this half, if not paid on July 1, become delinquent, and the last half are due on Sept. 1, and if not paid are delinquent) * * * the Collector shall publish an advertisement, giving notice of the intended application for judgment for sale of such delinquent lands and lots, and for judgment fixing the correct amount of any tax paid under protest * *. Said advertisement shall be once published at least 10 days previous to the day on which judgment is to be prayed, and shall contain a list of the delinquent lands and lots upon which the taxes or any part thereof remain due and unpaid * * * the names of owners * * * the total amount due thereon, and the

year or years for which the same are due. * * * Such collector shall give notice that he will apply to the county court on a specified day for judgment against said lands and lots for said taxes, and costs, and for an order to sell said lands and lots for the satisfaction thereof * * *; and shall also give notice on * * Monday next succeeding the date of application all the lands and lots for the sale of which an order shall be made, will be exposed to public sale at the building where the county court is held in said county, for the amount of taxes and costs due thereon * * *."

Also having to do with this proceedings is Sec. 710, which, among other things, provides:

"All applications for judgment and order of sale for taxes * * * on delinquent lands and lots * * * shall be made during the month of October."

Also having to do with this proceedings is Sec. 711 which, among other things, provides:

"In all cases * * * the county collector shall at least five days before the date of sale of delinquent lands or lots upon which the taxes * * * remain due and unpaid, send a notice by mail to the owner * * * giving notice of application for judgment and sale * *."

Also having to do with this proceedings, is Sec. 713, which, among other things, provides:

"The collector shall transcribe into a record prepared for that purpose, and known as the tax judgment, sale, redemption and forfeiture record, the list of delinquent lands and lots * * * which shall be made out in numerical order, and contain all the information necessary to be recorded, at least five days before the date on which the application for judgment is to be made; which record shall set forth the name of the owner * * *, the proper description

of the land or lot, the year or years for which the tax * * * are due, * * *, the valuation on which the tax is extended; the amount of the consolidated and other taxes * * *; the costs and the total amount of charges against such land or lot. Said record shall also be ruled in columns, so as to show the withdrawal * * * so as to show the amount paid before the rendition of judgment; the amount of judgment, and a column for remarks; the amount paid before sale and after the rendition of said judgment, the amount of the sale, amount of interest or penalty, amount of cost, amount forfeited to the State, date of sale, acres or part sold, name of purchaser, amount of sale and penalty, taxes of succeeding years, interest and when paid, interest and cost, total amount of redemption, date of redemption, when deed executed, by whom redeemed, and a column for remarks, or receipt of redemption money. The tax judgment, sale, redemption and forfeiture record shall be kept in the office of the county clerk."

Also having to do with this proceedings is Sec. 716, which, among other things, provides:

"The court shall examine said list * * * and shall pronounce judgment * * *. The court shall give judgment for such taxes * * as shall appear to be due, and such judgment shall be considered as a several judgment against each tract or lot or part of a tract or lot, for each kind of tax or special assessment included therein; and the court shall direct the clerk to make out and enter an order for the sale of such real property against which judgment is given, which shall be substantially in the following form:

(Here follows exactly the form of judgment as above set forth as entered by the County Court of Madison County, Illinois, in the tax sale proceedings.)

Sec. 720 provides the process of sale, and Sec. 722 provides for the entry of sale and redemption as follows:

"When any tract or lot shall be sold, it shall be the duty of the clerk to enter on the record aforesaid, the quantity sold and the name of the purchaser, opposite such tract or lot, in the blank columns provided for that purpose; and when any such property shall be redeemed from sale, the clerk shall enter the name of the person redeeming, the date, and amount of redemption, in the proper column."

Sec. 724 provides the manner for conducting the sale; Sec. 726 provides for the acceptance of the bid at the sale; Sec. 728 provides for payment by the purchaser, and Sec. 729 provides for the issuance of a certificate of purchase to the purchaser. Sec. 732 provides for an "Index to tax sale records", and Sec. 733 provides that all records of tax sale proceedings shall be deemed to be prima facie evidence to prove the sale of any land or lot for taxes, the redemption of the same, or payment of taxes * * * thereon.

Section 734 provides for redemption; Sec. 744 provides for notice to owner, etc., before making application for issuance of tax deed; Sec. 747 provides for the petition to the County Court for the issuance of the tax deed; and Sec. 749 provides the form of the tax deed.

All these sections have been complied with by the officers required by the Statute as shown by this record, and the defendant, Paul Meyer, has taken each step by him required to perfect a tax title, and has received his deeds.

The three requirements, namely, (1) identity of the lienor, (2) the amount of the lien, and (3) the identity of the property subject to the lien have been met. The lien here is choate, not inchoate. The above statutes provided for the listing of the property by taxing districts in a tax * * * book by the County Clerk; for the levy of the tax by the County Board, and certification of taxes levied by all other taxing districts in the month of September to the County Clerk for extension, who fixes and determines the amount before December 31st in each year, at which time the County Clerk is required to deliver to the County Collector the tax books as extended and as to which the County Clerk certifies to the Collector the amounts as shown by these extensions as the amounts that are to be collected. The law, Sec. 697, provides that these taxes are a lien as of January 1st of the year in which levied. The Collector makes the collection of the taxes voluntarily in two installments—on June 1st and September 1st of the succeeding year, and involuntarily thereafter by Application for Judgment and Sale, through the various steps as provided by statute and as above particularly pointed out.

The Statute declares the extended taxes to be a lien as of January 1st in the year levied, for the delivery by the Clerk to the Collector by December 31st, who collects them on June 1st and September 1st of the following year for the taxes voluntarily paid, and involuntarily thereafter by forced judgment sale. The taxes on the land here involved thus by force of the Illinois Statute became a lien on January 1, 1954. It is pertinent to point out here that Sec. 511 requires all real property to be listed by proper legal description in the name of the owner, either by the owner, his agent, or by the officers provided by law and assessed at the time and in the manner provided by Sec. 524. Thus we have the lienor, namely the State of Illinois, for the use of the County, School District, Municipality, etc., the ascertained amount of the taxes as of January 1, 1954, and the described property all set out in the tax records of Madison County, Illinois. This was over a year prior to the filing of the Internal Revenue Lien. Again it appears, from this record, that the tax sale proceedings was completed by the issuance of a tax sale certificate of purchase on January 18, 1955, under proceedings in which the amounts of the tax were judicially determined as against the specific property on a judgment entered by the County

Court of Madison County, Illinois, on January 10, 1955, and which, under the process of Illinois law, placed the title in the tax purchaser, the defendant, Paul Meyer.

All the requirements as laid down in United States v. City of New Britain, Conn., supra, are present. Also the Illinois Revenue Act is a complete statutory scheme providing for the levy of the tax, the collection of the tax, and for the enforcement of real estate tax delinquencies. Every step as provided is one in a chain of events that leads to a collection of the real estate tax, either voluntarily by payment or involuntarily by forced judgment sale. The defendant, Paul Meyer, acquired his title by the involuntary forced collection of the tax by tax sale under the judgment of the County Court of Madison County, Illinois. As early as the case of Atkins v. Hinman (1845) 2 Gilman (Ill.), 437, 448, the Supreme Court of Illinois announced the following rule concerning the effectiveness of a tax deed, viz.:

"According to the principles of the common law, a party who claims title to real estate by virtue of a sheriff's sale must produce a judgment and execution which authorized the sale before he can read the sheriff's deed as evidence of title. The judgment is the foundation of the title, and if void, the proceedings under it are mere nullities. The execution is the particular authority to the sheriff to make the sale, and if not in pursuance of the judgment, the acts of the sheriff are unwarranted and his deed vests no title in the purchaser. This Court decided in the case of Hinman v. Pope, 1 Gilman 131, that these principles are strictly applicable to the sale of land under the provisions of the 'Act concerning the Public Revenue', approved Feb. 26, 1839. The plaintiff, therefore, in an action of ejectment to recover the possession of land which he has purchased at a sheriff's sale for taxes, in order to substantiate his allegation of title, must establish first, a valid judgment against the land; second, a valid precept authorizing the sheriff to make the sale; and third, a proper conveyance of the land from the sheriff. These are essential to the validity of title; none of them can be dispensed with. When these requisites are shown, the plaintiff may safely rest his case, and it must prevail unless overthrown by his adversary. He is not required to go back to the judgment and show that a particular person had title to the land, either at the time of the assessment or at the rendition of the judgment. The judgment is against the land not against a particular individual. The land itself is sold, and not a particular interest in it. If the land was subject to taxation and the proceedings under the revenue law have been regular, and the owner has failed to redeem within the time limited by law, then the whole legal and equitable estate is vested in the purchaser. A new and perfect title is established. This results from the paramount authority of the State to levy taxes on property within its limits and coerce the payment by subjecting the property to sale. It is one of the necessary and inherent rights of the sovereign power. This case therefore, is not like the sale of the one under an ordinary judgment where the purchaser only succeeds to the title, which the debtor had at the recovery of the judgment."

The Court then goes on at some length and points out that the tax deed issued under tax sale proceedings in the year 1839, which are substantially the same proceedings as shown in this record, is a good and valid deed, paramount to all previous existing equities and liens. It cannot be said that this judgment lien and sale, and the tax sale certificate amounted merely to an inchoate lien. The proceedings, under the Illinois Revenue Law as herein set out, and as conceded by plaintiff to have been complied with, gave a new and perfect title to

defendant, Paul Meyer, even as good as against the plaintiff.

The only way that any lienholder could protect itself against the vesting of title upon the completion of the two-year constitutional and statutory period was to redeem within the two-year period. This was not done, and consequently upon the certificate holder complying with the requirements of Illinois law concerning the issuance of the deed by the County Clerk, the certificate issued at the tax sale ripened into a title good as against the world.

Under the conceded facts in this record, this Court is of the opinion that the Internal Revenue lien of the plaintiff was extinguished. In the case of United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192, the Court lays down the rules for the extinguishment of internal revenue junior liens. There, 80 S.Ct. page 1111, the Court said:

"We nevertheless believe it desirable to adopt as federal law state law governing divestiture of federal tax liens, except to the extent that Congress may have entered the field. It is true that such liens form part of the machinery for the collection of federal taxes, the objective of which is 'uniformity, as far as may be.' United States v. Gilbert Associates, 345 U.S. 361, 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071. However, when Congress resorted to the use of liens, it came into an area of complex property relationships long since settled and regulated by state law. We believe that, so far as this Court is concerned, the need for uniformity in this instance is outweighed by the severe dislocation to local property relationships which would result from our disregarding state procedures. Long accepted non-judicial means of enforcing private liens would be embarrassed, if not nullified where federal liens are involved, and many titles already secured by such means would be cast in doubt. We think it more harmonious with the tenets of our federal system and more consistent with what Congress has already done in this area, not to inject ourselves into the network of competing private property interests, by displacing well-established state procedures governing their enforcement, or superimposing on them a new federal rule. Cf. Board of Comm[issione]r's of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313."

The Court then proceeds to discuss the extinguishment of junior federal liens under California law and Pennsylvania law. Under California law, the divestiture of the junior lien was by power of sale in the mortgage instrument and under Pennsylvania law by sale under court judgment and decree. In each of these cases the Court held that the respective sales as provided for under State law, were effective to extinguish the federal tax liens. The Court said:

"In both cases, the practical effect upon junior liens is exactly the same. Be that as it may, we shall not so extend the principle of sovereign immunity. To do so would not only produce incongruous results as between these two cases, but would trespass upon the considerations which have led to our refusal to fashion a federal rule of uniformity respecting the extinguishment of federal junior liens under state procedures. It must be recognized that the factors supporting a federal rule of uniformity in this field, and those militating against the dislocation of long-standing state procedures are full of competiting considerations. They involve many imponderables which this Court is ill-equipped to assess, on which Congress has not yet spoken, and which we think are best left to that body to deal with in light of their full illumination. A wise solution of such a far-reaching problem cannot be achieved within the confines of a lawsuit. Until Congress otherwise determines, we think that state law is effective to

divest government junior liens in cases such as these."

The plaintiff argues that under the case of Wells v. Glos, 277 Ill. 516, 115 N.E. 658, the Illinois Supreme Court held that "the certificates of purchase issued at a tax sale, did not purport to convey any perfected, choate right which may have existed in the State, nor did the certificates of purchase convey any legal or equitable interest in the realty."

The quoted words are taken out of context, and do not show the full reasoning of the Court. The Court said, p. 518, 115 N.E. p. 659:

"In Huftalin v. Misner, 70 Ill. 55, it was held that a certificate of purchase on an execution sale gave to the defendant in that suit no title or interest in the lands sold, *for the reason that the time for redemption had not expired*. In the case of Bowman v. People, 82 Ill. 246, 25 Am.Rep. 316, the single question was whether the holder of a certificate of purchase under an execution sale had such an interest in the land before the expiration of the period allowed for redemption as was subject to levy and sale. The Statute defined the term 'real estate' to include lands, tenements, hereditaments, and all legal and equitable rights therein and thereto, and all such rights and interests were subject to execution. The court stated the question as follows: 'What interest does a purchaser of land at a sheriff's sale obtain in the land itself before the expiration of the period of redemption? Does that interest, whatever it may be, come within any definition given of real estate?' The court answered the question as follows: 'We think it does not. It is not expressly defined, and if it is comprehended at all in the statutory definition it must be by the indefinite words 'all legal and equitable rights and interests therein and thereto,' but we are of the opinion it is neither a legal nor equitable estate in the land itself before the lapse of the period allowed the judgment debtor for redemption.' The court sustained that conclusion by reasoning that before the expiration of the period for redemption it could not be known whether the interest would be personalty or realty; that if redeemed after the death of the purchaser the money would go to his personal representatives, and not his heirs, and that it was a mere bid for the land that might or might not become an interest in the soil. In Gage v. Busse, 94 Ill. 590, a bill was filed to remove as a cloud upon title certificates of sales of land for taxes, and it was held that no freehold was involved. In Lightcap v. Bradley, 186 Ill. 510, 58 N.E. 221, it was held that a certificate of purchase does not purport to convey any title but on its face states the contrary by stating the amount of the bid and when the holder will be entitled to title if the premises are not redeemed. In Kronenberger v. Heinemann, 190 Ill. 17, 60 N.E. 64, where a petition was filed in a chancery cause praying that a sale be set aside and the certificate cancelled, it was held that a certificate of sale does not convey any title. In Bush v. Caldwell, 224 Ill. 93, 79 N.E. 434, in which a bill was filed to enjoin the purchaser at a tax sale from taking out a tax deed, the court held that, as a tax deed had never been issued and might never be, the claim of the purchaser had not yet ripened into a title. In Hammalle v. Lebensberger, 256 Ill. 547, 100 N.E. 138, it was said that a certificate of sale does not convey or purport to convey title. In Hockett v. Logan, 257 Ill. 326, 100 N.E. 978, a bill was filed to set aside a certificate of sale, and it was held that the certificate did not convey or purport to convey title."

█ This case does not hold that an intervening lienholder, junior in point of time, can defeat the issuance of a deed by merely filing a lien prior to the expira-

tion of the period of redemption. It does hold that unless a junior lienor redeems before the expiration period expires, his rights will be cut off by the expiration of the statutory period of redemption and issuance of the deed in accordance with the terms of the Statute. The plaintiff in this case concedes that the defendant Paul Meyer and the officers directed to carry out the terms and provisions of the Statute for the collection and enforcement of collection of real estate taxes, have fully met the statutory requirements. When the owner of land, or any one who has the right to take his place, lets the period of redemption expire, he does so at his peril. The Supreme Court of Illinois has so held in Ryhiner v. Frank, 105 Ill. 326, 330, where the Court lays down the rule as follows:

"There is a like failure to establish title in the plaintiff under the trustee's deed of Bandelier to him. The deed of trust under which that trustee's deed was made, was executed by McCoy to Bandelier, trustee, on March 30, 1875. But the judgment against McCoy, in favor of Frank Brothers, under which defendant claims, was rendered previous to that date, viz., on March 18, 1875, and so was a lien upon the lots from and after that time, making it a prior lien to the incumbrance of the trust deed executed March 30, 1875; and although the sheriff's deed to the defendant under this McCoy judgment was not executed until August 2, 1878, yet it related back to the date of the judgment, and took effect as of that date against the subsequent deed of trust of McCoy, and the trustee's deed thereunder, making it a paramount title to the latter."

To the same effect is Gorham v. Farson, 119 Ill. 425, 10 N.E. 1, reversing 18 Ill.App. 520.

Accordingly, the motion of Paul Meyer to strike the Complaint of plaintiff is allowed, and as to him and the property as described in the Complaint as now owned by him under the tax title as acquired under the Illinois Revenue Act, the federal income lien is extinguished. Prayer (a) of the Complaint, that this Court find and determine that Harry T. Hartman is liable to the United States of America for unpaid taxes and penalties assessed against him in the amount of $35,861.85, plus interest thereon as provided by law is so found, and the Court further finds and determines that the defendant, Anna Hartman, is jointly and severally liable to the United States for unpaid taxes and interest in the amount of $11,331.47 plus interest thereon as provided by law. The plaintiff will prepare the two personal judgments against Harry T. Hartman and Anna Hartman as herein found for filing and entry.

Under prayers (b), (c) and (d), of the Complaint the Court finds, orders, adjudges and determines,

(1) that the United States does not have valid and first liens for unpaid taxes and assessed interest and penalties against the real estate described in the Complaint, but orders, adjudges and decrees that all right, title and interest in the said described real estate is in Paul Meyer; and the prayer of the Complaint for foreclosure of the alleged internal revenue tax lien is denied.

It is further ordered that plaintiff have and recover its costs as against Harry T. Hartman and Anna L. Hartman, but not against Paul Meyer.

It is further ordered that the defendant, Paul Meyer, prepare decree and judgment orders for dismissal of the Complaint and ordering and adjudging that his title is good and valid as against the alleged lien of plaintiff and ordering that the alleged lien as to the property described in the Complaint, has been extinguished.