(No. 33966.—

RAY FRANZEN *et al.,* Appellees, *vs.* CHARLOTTE DONICHY *et al.,* Appellants.

*Opinion filed September 25, 1956—Rehearing denied Nov 19, 1956.*

384

Charles F. Grimes, William M. Rice, James W. Bayer, and A. Howard Langert, all of Chicago, for appellants.

Edward G. Bicek, and Alfred F. Beck, both of Chicago, for cross-appellant, Leah Palkey.

C. Hilding Anderson, and Joseph P. Burke, both of Chicago, for appellee.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

Ray Franzen, the purchaser at a tax foreclosure sale in the circuit court of Cook County, filed a petition to set aside a redemption on the ground that the respondents, Charlotte Donichy and Patricia Theriault, did not have sufficient title or interest in the property to entitle them to redeem. Leah Palkey, the occupant of the property, filed an intervening petition claiming title and praying that respondents be decreed to have no interest therein. The issues were referred to a master, who found in favor of respondents and recommended that both the original and the intervening petitions be dismissed. The court sustained petitioner Franzen's exceptions to the report. Those of the intervening petitioner were overruled and the intervening petition was dismissed. By separate decrees dated November 28, 1955,

the court ordered the county clerk to expunge the redemption and to issue a tax deed to petitioner Franzen. Respondents appeal, insofar as the decrees set aside their redemption, and the intervening petitioner has perfected a cross-appeal objecting to the dismissal of the intervening petition. Jurisdiction of this court on direct appeal is based on the fact that a freehold is involved. See *People* v. *Hess,* 7 Ill.2d 192.

The foreclosure suit was begun in 1952, for unpaid taxes and assessments from 1929 to 1946. The suit proceeded regularly to foreclosure decree and order of sale. At the sale, held December 30, 1952, petitioner Franzen was the purchaser; and in due course the sale was approved by the court and certificates of sale were issued to him. On December 21, 1954, respondents redeemed; and on January 20, 1955, the present petition was filed. No question is raised concerning the validity of the foreclosure and sale, the sole issue being whether the respondents had sufficient interest to entitle them to redeem.

The record shows that in 1932 the property in question, consisting of a small house on four lots in Franklin Park, Illinois, was owned by one Anna Frost. In that year she applied for admission to the Danish Old Peoples Home. On July 16, 1935, she was admitted to the Home, which agreed in writing to keep and maintain her for the remainder of her life in consideration of the sum of $500 and certain promises to be performed by her. The instrument, executed by both parties and acknowledged by Anna Frost, is set forth on a printed form bearing the title "Contract," and appears in the form of a contract. Paragraph 3 thereof provides in part that the applicant "does hereby grant, bargain, sell and convey to said The Society for the Danish Old Peoples Home, all of his property, both real and personal, of every kind and description, and wherever situated, which he now owns or to which he may now or hereafter be entitled, * * * and does further agree and

covenant to promptly furnish the said Home with full information in relation to any such property or rights; and also to execute and deliver to said Home any further transfers, conveyances, assurances and instruments which may be required or requested of me for the purpose of carrying this agreement and provisions thereof into effect." Anna Frost remained in the Home until her death on April 6, 1938.

The Society for the Danish Old Peoples Home conveyed its interest in the property to respondents by quitclaim deed on November 30, 1954. The instrument between Anna Frost and the Old Peoples Home was recorded November 17, 1954, and the quitclaim deed was recorded December 6, 1954. The question presented is whether the respondents, by virtue of these instruments, possessed an interest in the property so as to give them the right to redeem. A determination of that question depends, in turn, upon (1) whether the instrument of July 16, 1935, was sufficient to convey a legal or equitable title to the Old Peoples Home, (2) whether Anna Frost had conveyed her property to the intervening petitioner prior to that date, and (3) whether the intervening petitioner had acquired title by adverse possession prior to the redemption by respondents.

With respect to the effect of the instrument dated July 16, 1935, respondents contend first that it constituted a conveyance of the legal title, and second that even if it were only an agreement to convey, the Old Peoples Home thereby acquired an equitable interest in the property upon fully performing its part of the agreement. We think it clear that the instrument is merely a contract, not a deed or conveyance of title. The question is one of intention, to be gathered from the instrument itself; and "although there are words of conveyance *in praesenti* in a contract for the purchase and sale of lands, still if from the whole instrument it is manifest that further conveyances were

contemplated by the parties, it will be considered an agreement to convey and not a conveyance." (See *Williams* v. *Paine,* 169 U. S. 55, 76, 42 L. ed. 658, 667.) It makes no difference for present purposes, however, that the instrument was a mere contract to convey. It was effective to vest in the Home an equitable title to the interest of Anna Frost. The general reference to all of her real estate was sufficient to identify the property, with the aid of extrinsic evidence, and did not render the instrument void for uncertainty of description, as urged by the petitioners. See *Welsh* v. *Jakstas,* 401 Ill. 288; *Cumberledge* v. *Brooks,* 235 Ill. 249; *Holbrook* v. *Forsythe,* 112 Ill. 306.

If Anna Frost still retained an interest in the real estate at that time, the Home became equitably entitled to it; and if the right of the Home and its grantees has not been since extinguished by adverse possession on the part of the intervening petitioner, the respondents could redeem even though their interest was merely equitable in nature. While a mere stranger to the property has no right to redeem, it is enough if the person assuming to redeem has some "interest" therein, even though it does not amount to complete ownership. (*People* v. *Hess,* 7 Ill.2d 192; *Houston* v. *Buer,* 117 Ill. 324.) Redemptions are looked upon with favor, and unless injury is to result to the purchaser at the sale a liberal construction will be given redemption laws. *Mohr* v. *Sibthorp,* 395 Ill. 418.

It is further contended that the intervening petitioner and her husband, since deceased, had acquired title from Anna Frost prior to her contract with the Old Peoples Home by an unrecorded deed which has since been lost; and that the latter therefore did not own the property when she executed the contract through which respondents purport to derive their interest. The only evidence to sustain this claim is the testimony of the intervening petitioner, Palkey, that in 1932 or 1933 she and her husband received a quitclaim deed in consideration of $350 in cash and a

promise to pay $1050 additional at the rate of $35 per month and to assume a $2000 mortgage indebtedness. Petitioner also seeks corroboration for such a sale by the facts that in her 1932 application for admission to the Home, Anna Frost stated as her means of support "income from sale of real estate;" and that neither in the application nor in the subsequent contract did she list any real estate, although a statement of property owned was called for therein. The record contains evidence, on the other hand, of conversations prior to the hearing, in which the witness stated she had been paying "rent" to Anna Frost. The master specifically found that she was evasive, and that "She was obviously trying to say the right thing to support her case rather than to recite facts. Her demeanor was not such as to induce credence and most of her examination was a confusion of leading questions, conclusions and contradictions from which little admissible evidence could be drawn." It is clear that the conclusions of the interested witness, Palkey, are not enough to prove a conveyance of the property, nor can the equivocal statements and omissions in Anna Frost's application and contract with the Old Peoples Home supply the deficiency. One who seeks to establish the existence of a lost deed by parol testimony must bear the burden of making such proof in a clear and conclusive manner. Deeds are evidence of title, and if they are lost public policy demands that proof of their former existence be strong and conclusive. (*Stephens* v. *Collison*, 330 Ill. 48.). The evidence offered here falls far short of this standard.

The same infirmity exists in the intervening petitioner's alternative contention that she acquired title by adverse possession. The evidence discloses that she was in posession for over 20 years and had made some repairs, but no taxes were paid and there is little to indicate her possession was adverse or under claim of title. It appears instead that she entered into occupancy as a tenant, and there is no satis-

factory evidence to show a subsequent change in the character of the possession. Petitioner points to the fact that Anna Frost listed no real estate in her application and contract with the Old Peoples Home, and they ask us to infer from this "that she knew she had parted with title" and that "the only ones to whom she could have conveyed were the Palkeys." If such an inference were justified title would have been shown by actual conveyance, and it would be unnecessary to establish claim of ownership for purposes of adverse possession. But such meager evidence is as inadequate for the purpose of proving adverse possession as it is for establishing the existence of a lost deed. "In repeated decisions we have announced the rule to be that adverse possession cannot be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be clear, positive and unequivocal." (*Sottiaux* v. *Bean*, 408 Ill. 25.) Where possession has been acquired in subserviency to the owner, clear and positive assertion of an adverse right must be shown before any foundation can be laid for the operation of the statute. (*Joseph* v. *Evans*, 338 Ill. 11.) Both the master and the court found there was insufficient evidence to prove Leah Palkey had acquired title, either through adverse possession or by deed, and it is clear that such findings are not against the manifest weight of the evidence.

We conclude that the circuit court properly dismissed the intervening petition, but erred in expunging the redemption and ordering issuance of the tax deed. The decrees are reversed and the cause remanded with directions to enter a decree for respondents in accordance with the views herein expressed.

*Reversed and remanded, with directions.*